1 | **MICHAEL G. DAWE, SBN 94987**
**BRIAN D. CRONIN, SBN 317209**
2 | **Of Counsel to**
**BORCHARD & CALLAHAN**
3 | **michaelgdawe@icloud.com**
**25909 Pala, Suite 300**
4 | **Mission Viejo, CA 92691**
**Phone No.: (657) 622-3276**
5 | **Fax No.: (949) 457-1666**
Attorneys for Plaintiff

6

7 | **UNITED STATES DISTRICT COURT**

8 | **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

9

10 | PACIFIC BAY MASONRY, INC., a
California corporation,

11 | Plaintiff,

12 | v.

13

14 | NAVIGATORS SPECIALTY INSURANCE
COMPANY, a New York corporation; and
DOES 1 through 10, inclusive,

15 | Defendants.

16

17

18

Case No. 3:20-cv-07376-WHA

Hon. William Alsup, Courtroom 12

**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Filed Concurrently with Declaration of Ray Wetmore

Date:       September 9, 2021
Time:       8:00 a.m.
Crtrm.:    12

Action filed: October 21, 2020
Trial date:   January 10, 2022

19

20

21

22 | **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

23 | PLEASE TAKE NOTICE THAT on September 9, 2021, at 8:00 a.m., or as soon thereafter

24 | as counsel may be heard, in Courtroom 12 of the above-entitled court, located at 450 Golden Gate

25 | Avenue, San Francisco, CA 94102, Plaintiff Pacific Bay Masonry, Inc. ("Pacific Bay") will and

26 | hereby does move this Court for partial summary judgment and, or, in the alternative, an order

27 | treating certain material facts established in this case.

28 | This motion seeks partial summary judgment on the following claims:

1   **Claim 1:**    As of the August 15, 2018 date upon which it denied insurance coverage to

2   pacific Bay, Defendant Navigators Specialty Insurance Company ("Navigators") had a duty to

3   defend Pacific Bay against the cross-complaint of general contractor Deacon Corp., a California

4   corporation ("Deacon") in the underlying construction defect litigation entitled *Niki Properties, LLC*

5   *v. S.D. Deacon Corp. et al*, Alameda County Case No. RG17871279 ("Underlying Case").

6   **Claim 2:**    As of the August 15, 2018 date upon which it denied coverage to Pacific Bay,

7   Navigators had duties both to defend and to indemnify Pacific Bay with respect to Pacific Bay's

8   contractual duty to defend and indemnify Deacon against the allegations of the Owner, Niki

9   Properties, LLC, in the Underlying Case.

10      In addition to Fed. R. Civ. P. 56(a) and (g) this motion is based on this notice of motion, the

11  attached Memorandum of Points and Authorities, the declarations of Ray Wetmore filed

12  concurrently herewith, all of the pleadings, files, and records in this proceeding, all other matters of

13  which the Court may take judicial notice, and any argument or evidence that may be presented to or

14  considered by the Court prior to its ruling.

15  DATED: August 2, 2021                     BORCHARD & CALLAHAN

16

17                                      By:    */s/ Michael G. Dawe*

18                                             MICHAEL G. DAWE
                                               BRIAN D. CRONIN
19                                             Attorneys for Plaintiff

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This is an insurance coverage dispute over, among other things, whether Navigators had a duty to defend, and, or indemnify its insured masonry subcontractor, Pacific Bay, in an underlying construction defect lawsuit. (The "CD Litigation.") The CD Litigation arose out of a construction project (the "Project") which comprised the construction of a retail facility, and contiguous parking structure, on Broadway in Oakland. The CD Litigation comprises (i) a Complaint by the owner of the Project (the "Owner"[1]) against the general contractor ("General Contractor"[2]) and (ii) a cross-complaint by the General Contractor against subcontractor Pacific Bay and others.

Two issues are presented for the Court's determination in this motion: First, whether Navigators incorrectly denied its duty to defend Pacific Bay in the CD Litigation; second, whether Navigators incorrectly denied its obligation to indemnify Pacific Bay with respect to Pacific Bay's contract-based duty to indemnify the General Contractor against the claims of the Owner in the CD Litigation.

### A.  Summary of Claim 1: As of the August 15, 2018 date upon which it denied coverage, Navigators had a duty to defend Pacific Bay against the cross-complaint of General Contractor Deacon in the underlying CD Litigation.

#### (i)  Because Navigators neither attempted to establish, nor could have established, that the "arising out of" condition precedent to the application of the "your work" and "your product" exclusions had occurred, it could not justifiably assert those exclusions as a basis for denying coverage.

Navigators denied Pacific Bay coverage in connection with the underlying CD Litigation on August 15, 2018. Exhibit 3. (The "Denial.") Navigators' denial was based on two exclusions in its policy insuring Pacific Bay: the "your work" exclusion and the "your product" exclusion. The first

---

[1] The Owner is Niki Properties, LLC.
[2] The General Contractor is Deacon Corp.

issue requires resolution of the question of whether, at the time of Navigators' Denial, either, or both, of those two policy exclusions applied to negate even the "bare potential or possibility"[3] of covered damages being proven against Pacific Bay in the CD Litigation. Put alternatively, if there was so much as the "bare potential or possibility" of covered damages being proven against Pacific Bay in the CD Litigation as of the August 15, 2018 date of the Denial, then Navigators had a duty to defend, and its denial of coverage was wrongful.

As will become evident from the discussion below, while two potentially applicable exclusions are involved here, the issue presented with respect to each is practically identical. To wit: as a result of the similar "arising out of" language employed in both exclusions it appears virtually certain that the Court's conclusion with respect to the issue will be the same as to both of the two exclusions: *i.e.*, either Pacific Bay is correct, and neither exclusion permitted Navigators' Denial, or Pacific Bay is incorrect, and Navigators correctly relied on one or both of the two exclusions as negating its duty to defend.

This issue requires the Court to interpret, as a matter of law, the meaning, and hence the exclusionary scope, of each of the two exclusions relied upon by Navigators. Each exclusion contains scope-limiting "arising out of" language. (Hereinafter the "arising out of" condition precedent.) Thus the "your work" exclusion excludes coverage for "property damage" to the "work" of the insured, but only if the "property damage" also *arises out of* the insured's "work" *or any part of it*. Similarly, the "your product" exclusion excludes coverage for "property damage" to the insured's "product", but only to the extent the alleged "property damage" *arises out of* the insured's product *or any part of it*.

Navigators' Denial incorrectly and overbroadly interprets each of the two exclusions **as if the exclusion did not have the "arising out of" condition precedent.** Thus, Navigators' Denial assumes that, so long as there is an allegation of "property damage" to the "work" or "product" of the insured, that is alone sufficient to trigger the application of the "your work" or "your product" exclusions. In its Denial Navigators did not purport to have determined, nor could it have done so

---

[3] *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 300.

at that incipient point of the underlying CD Litigation, whether the alleged "property damage" *arose out of* the "work" or the "product" of Pacific Bay.

Pacific Bay submits that, if the "your work" and "your product" exclusions are correctly interpreted, with the scope-limiting "arising out of" condition precedent properly applied, then it is necessary to conclude as a matter of law that Navigators' Denial was incorrect, and hence that Navigators owed Pacific Bay a duty to defend no later than the date of its denial letter, August 15, 2018.

**B.    Summary of Claim 2: Navigators had a duty to both defend and indemnify Pacific Bay under the "insured contract" coverage of the Policy.**

The second issue presented here focuses on the "insured contract" coverage of the Navigators Policy. Under this coverage Navigators insured Pacific Bay for its contractually undertaken liability to defend and/or indemnify a third party for tort damages. Such an indemnification contract is defined in the Policy as an "insured contract." (Exhibit 1 at NAV 613, ¶ 2. b. (2).) Pacific Bay entered an "insured contract" with the General Contractor when Pacific Bay signed its subcontract agreement which, in accordance with custom and practice in the construction industry, included a contractual indemnity provision by which subcontractor Pacific Bay agreed to defend and indemnify the General Contractor Deacon with respect to any liability exposure arising from Pacific Bay's work and, or product. Pacific Bay was contractually obligated to honor its duty to indemnify the General Contractor when the General Contractor tendered its defense of the CD Litigation to Pacific Bay, and through Pacific Bay to Navigators. When Pacific Bay became legally obligated to defend and indemnify the General Contractor against the allegations of the Owner in the underlying lawsuit, Navigators became obligated to indemnify Pacific Bay for that liability under Navigators' "insured contract" coverage.

## II.    STATEMENT OF FACTS

**A.    September 2014: General Contractor subcontracts with Pacific Bay.**

On September 25, 2014, Pacific Bay entered a subcontract with the underlying General Contractor. Decl. of Wetmore, ¶ 5, Exhibit 2. The Project involved the construction of a retail structure and parking facility on Broadway in Oakland California. Pacific Bay's scope of work

included installing the CMU[4] walls for the building, including the parapet walls on top of the parking garage, and the CMU walls of the planters in front of the Project. The scope of work also included masonry reinforcement, i.e., rebar, within the masonry block. Decl. Wetmore ¶ 6. Pacific Bay's scope of work it did not include any waterproofing or water intrusion barrier work. *Id.* at ¶ 7. The subcontract included an express indemnity provision by which Pacific Bay agreed to defend and indemnify the General Contractor against claims arising out of, or connected with Pacific Bay's obligations under the Subcontract. Exhibit 2, Section 31, NAV 200. Pacific Bay submits that this indemnity provision constituted an "insured contract" as defined by the Policy.

Pacific Bay's work began March 7, 2015, and was completed on or about January 18, 2016. Decl. Wetmore, ¶ 8. Though the Denial states that Pacific Bay advised Navigators that subcontractors were not used in the Project, Navigators' claim file notes reflect, to the contrary, that on or around June 25, 2018, prior to the August 15, 2018, Denial, Pacific Bay's "Kristy" advised Navigators' claims handler Chuck Davis that Pacific Bay "used one subcontractor who is now out of business for some masonry work." Decl. Wetmore, ¶ 39, Exhibit 7 at NAV 321-323.

**B.** **August 2017: Owner initiates the CD Litigation; General Contractor then sues subcontractor Pacific Bay and others.**

On August 11, 2017, the Owner initiated the CD Litigation by filing a lawsuit suing the General Contractor. As acknowledged by Navigators, the complaint alleged property damage including claims involving the CMU walls constructed by Pacific Bay. Decl. Wetmore, ¶ 31. As further acknowledged by Navigators, the Owner's Complaint sued the General Contractor Deacon in tort. See Exhibit 3, NAV 328.

On November 21, 2017, the General Contractor filed a cross-complaint which was amended on January 8, 2018. Pacific Bay was named as a cross-defendant by Roe amendment on June 29, 2018. The causes of action against Pacific Bay included an express contractual indemnity cause of action which Pacific Bay submits triggered coverage and/or potential coverage (and hence a duty to defend) under the "insured contract" coverage of the Navigator Policy. See Exhibit 3, NAV 328.

---

[4] "CMU" stands for concrete masonry units, colloquially referred to as "cinder block."

**C.**    **General Contractor demands that Navigators honor Pacific Bay's contractual obligation to defend and indemnify General Contractor**

Prior to Pacific Bay tendering its defense of the CD Litigation to Navigators, the insurer was put on notice of the claim by counsel for the General Contractor. Exhibit 4. As reflected in the Denial, the General Contractor made "a contractual defense/indemnity tender based on language in the" subcontract between the General Contractor and Pacific Bay. Exhibit 3, NAV 326. From Pacific Bay's perspective the operative "language" referenced the "insured contract" coverage in the Navigators' Policy.

**D.**    **Pacific Bay simultaneously demands that Navigators honor its duty to defend and indemnify Pacific Bay.**

Contemporaneous with the General Contractor tendering its defense to Pacific Bay and Navigators, Pacific Bay tendered its defense to Navigators. Decl. Wetmore, ¶ 18. Pacific Bay agrees with the General Contractor that, to the extent that Pacific Bay was obligated to provide the General Contractor with a defense or indemnity pursuant to the express contractual indemnity provision in the subcontract (*i.e.*, the "insured contract") between the parties, Navigators is obligated to "mount and fund" the defense of both Deacon and Pacific Bay.

**E.**    **Navigators denies coverage and the duty to defend or indemnify Pacific Bay based upon the contended application of the "your product" and "your work" exclusions, without making any effort to determine whether the alleged "property damage" *arose out of* either Pacific Bay's "product" or "work."**

As reflected in the Denial, Navigators claimed to have completed its investigation by the August 15, 2018 date of that written denial of coverage. Upon that claimed completion of its investigation Navigators denied the tenders of defense of both Pacific Bay and Deacon.

**F.**    **Navigators implicitly concedes that, but for the contended application of the exclusions, it would have a duty to defend due to the alleged "occurrence" of "property damage."**

Navigators' Denial implicitly acknowledged that, but for Navigators' contended application of the "your product" and "your work" exclusions, the General Contractor's claims against Pacific

Bay were sufficient to trigger a duty to defend in Navigators in that those claims alleged an "occurrence" of "property damage" during the policy period. To wit, Navigators acknowledged: "The allegations of the plaintiffs include 'property damage' resulting from construction defect including work completed by you in/for your company which would constitute an 'occurrence'[5] within the policy period." Decl. Wetmore, ¶ 21, Exhibit 3, NAV 330.[6]

At some point following PBM's tender of defense to Navigators and during Navigators' "investigation" of the claim, PBM's principal Ray Wetmore spoke with Navigators' claims representative Chuck Davis about the effloresce appearing on the CMU walls. Mr. Wetmore recalls stating to Mr. Davis that the silicone sealer applied as a waterproofing membrane to the face of the CMU walls was clearly damaged as a result of the efflorescence, and that the silicone sealer was not within the scope of PBM's work: it was done by another subcontractor. Decl. Wetmore, ¶ 19.

**G.     The "your work" and "your product" definitions and exclusions.**

Navigators cited the "your work" and "your product" exclusions in the Denial. Under the heading of "Damage to Your Product," the "your product" exclusion excludes coverage for: "'Property damage' to 'your product' **arising out of it or any part of it**." Ex. 1, NAV 616 (emphasis). Under the heading of "Damage to Your Work," the "your work" exclusion excludes coverage for: "'Property damage' to 'your work' **arising out of it or any part of it** and included in the 'products-completed operations hazard.'" *Id.* (emphasis). The essentially identical "arising out of it or any part of it" requirement for the applicability of each of the "your work" and "your product" exclusion are included in the above referenced ""arising out of" condition precedent" terminology.

Navigators also quoted an additional limitation to the "your work" exclusion: "This exclusion does not apply if the damaged work or the work out of which the damage arises was

---

[5] The quoted terms "property damage" and "occurrence" are defined in the Policy and constitute triggers of Navigators' duty to defend barring the dispositive application of one or more exclusions. Pacific Bay does not perceive that the definitions of these terms are necessary for this motion and hence they have not been quoted. They can be found, however, in Exhibit 1 to the declaration of Ray Wetmore at NAV 626 and 627.

[6] As noted below, the fact that Navigators concedes that the duty to defend-triggering conditions precedent of "occurrence" and "property damage" have occurred results in Navigators having the burden of proof in this motion as to its contended application of one or both of the "your product" and "your work" exclusions.

performed on your behalf by a subcontractor." Exhibit 3, NAV 330. Pacific Bay submits that since Navigators was aware that a subcontractor was used by Pacific Bay, Navigators was necessarily aware that, at least to that extent, the "your work" exclusion could not have applied to negate any potential for coverage.

In addition to citing the "your work" and "your product" exclusions, Navigators cited the definitions of both "your work" and "your product." Neither of these definitions appears dispositive, either beneficially or detrimentally in this motion. They are found at Exhibit 3, NAV 331-32.

Navigators acknowledged the alleged "occurrence" of at least <u>three distinct categories</u> of "property damage" asserted against Pacific Bay. Summarizing the nature of the claims against Pacific Bay in the context of the "your product" and "your work" exclusions, Navigators characterized the "property damage" allegations against Pacific Bay as falling within three general categories:

> The plaintiff (sic) allegations of "property damage" include (1) efflorescence on the surface of the CMU of and planters installed by (Pacific Bay). Experts for the plaintiff have expressed concern that (2) the rebar within the walls may deteriorate due to the lack of moisture barrier within the parapet walls. There is (3) a claim with (sic) differential movement of the CMU wall but currently there are no claims of third-party property damage related to this issue.

Exhibit 3, NAV 247.

Navigators concluded its discussion of the contended application of the "your work" and "your product" exclusions with the contention that:

> As the claims are currently presented, the "property damage" alleged includes the repair, replacement of (sic) removal of "your work" or "your product", (these) exclusions… will exclude this type of "property damage."[7]

In advising Pacific Bay of the basis for its denial, Navigators stated that it found "no duty to either defend or indemnify (Pacific Bay)… **based on the fact the allegation of "property damage"**

---

[7] PBM contends that this putative characterization of the "your work" and "your product" exclusion is materially false and misleading, in that it has the effect of concealing the critically important "arising out of" condition precedent in the two exclusions, *i.e.*, that neither exclusion applies unless it is first established with certainty that the alleged "property damage" ***"arises out of"*** the "work" or the "product," or any part of the "work" or the "product," as the case may be.

Case No. 3:20-cv-07376-WHA

is to **"your work" and "your product**." Exhibit 3, NAV 326 (emphasis). Importantly, from Pacific Bay's perspective, nothing in the navigators Denial stated nor implied that Navigators purported to have determined that the alleged "property damage" had arisen out of either Pacific Bay's "work" or its "product" or any part of it. See Exhibit 3.

Therein lies the crux of Claim 1 of this motion. The Denial clearly reflects that, from Navigators' perspective, the mere facts that there was alleged damage to Pacific Bay's "work," and alleged damage to Pacific Bay's "product," were sufficient to trigger the "your work" and "your product" exclusions, regardless of whether the "arising out of" condition precedent had occurred. As argued below, Pacific Bay submits that Navigators could not have justifiably denied coverage, or the duty to defend, based on the "your product" or "your work" exclusions, without having first determined that the "arising out of" condition precedent had occurred.

Put alternatively, for Navigators to have correctly concluded that the "your work" or "your product" exclusion had been certainly triggered, to the extent that either would have legally permitted Navigators' Denial, Navigators had to establish that the "arising out of" condition precedent had occurred. To establish that, Navigators had first to establish that any alleged damage to Pacific Bay's "work" had arisen **solely** out of that "work," and that any alleged damage to Pacific Bay's "product" had arisen **solely** out of that "product." Pacific Bay submits that, to the extent that any alleged "property damage" could have arisen out of a causal source other than the "work" (with respect to the damages alleged to the "work"), or the "product" (with respect to damages alleged to the "product"), such an allegation would be outside the respective "arising out of" condition precedent of the two exclusions and hence would legally preclude Navigators Denial.

### H.     Navigators' Denial implicitly concedes the non-occurrence of the "arising out of" condition precedent

Apart from failing to make any effort to determine of whether the "arising out of" condition precedent had been met, it is evident from the express content of the Denial that Navigators was aware, at the time of the Denial, that the alleged "property damage" to Pacific Bay's "work" or "product" arose out of causal sources other than the "work" or "product" of Pacific Bay. Thus, the Denial acknowledges that both water intrusion-based efflorescence damages on the planter walls

and the similarly water-intrusion-based allegations of rebar damage in the parking structure wall, was the product of an alleged lack of waterproofing of/in those structural components. As expressly acknowledged by Navigators, any failure to properly design and/or install effective waterproofing with respect to the efflorescence damage and rebar damage was neither the "work" nor the "product" of Pacific Bay. Navigators acknowledged that waterproofing and installation of any moisture barrier was not within Pacific Bay's scope of work.

Hence, it is a matter of established fact that Navigators denied coverage based on the "your work" and "your product" exclusions even though it knew that, because there were potential causal sources of damage to Pacific Bay's "work" and/or "product" which did not *arise out of* Pacific Bay's "work" or "product" *or any part of* those items, the essential "arising out of" condition precedent had not occurred.

While the Denial did not pinpoint any causal source of the alleged differential movement damages it is equally clear that the Denial did not identify that the source of that differential movement damage was either the "work" or "product" of Pacific Bay. Hence Navigators' Denial does not purport to establish the occurrence of the essential "arising out of" condition precedent with respect to the differential movement damages.

I.     **Navigators' "insured contract" promise obligates it to indemnify Pacific Bay for Pacific Bay's contractual obligation to defend and indemnify the General Contractor.**

As noted above, the General Contractor put Navigators on formal notice of the General Contractor's claim against Pacific Bay prior to Pacific Bay having done so. The content of the General Contractor's "TENDER OF ADDITIONAL INSURED DEFENSE" reflects that there were two avenues of benefit from Navigators being asserted by the General Contractor. First, the General Contractor was claiming direct entitlement to coverage from Navigators as a named "additional insured" under the policy.[8] Second, and completely distinct from the concept of "additional insured," the General Contractor was putting Navigators on notice that the General Contractor was

---

[8] From PBM's perspective, the General Contractor's claimed status as an "additional insured" is not material to this motion.

the beneficiary of an express indemnification provision in its subcontract with Pacific Bay. Ex. 4, NAV 173.

Focusing only on the General Contractor's notification to Navigators of its request for defense and an indemnification pursuant to the indemnification provision in the General Contractor's subcontract with Pacific Bay, Policy provides Pacific Bay with defense and indemnity coverage for what the insurance policy defines as an "insured contract." As defined by Navigators, an "insured contract" is:

> That part of any … contract or agreement pertaining to your business ... under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Exhibit 1, NAV 625 at ¶ 9. f.

**J. Pacific Bay's contract to indemnify General Contractor is an "insured contract" under the Policy.**

To the extent that it extends to defending and/or indemnifying the General Contractor for its tort liability to the Owner, Pacific Bay's contractually undertaken obligation to defend and indemnify the General Contractor is an "insured contract." As an "insured contract" Pacific Bay's indemnity promise to the General Contractor triggers the obligation in Navigators to indemnify Pacific Bay for Pacific Bay's duty to indemnify the general contractor. The source of Navigators' obligation to insure Pacific Bay against Pacific Bay's liability under an "insured contract" emanates, somewhat bizarrely, from an exclusion in the Policy. That "Contractual Liability" exclusion, provides in relevant part:

> This insurance does not apply to…. Contractual Liability
>
> > "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. **This exclusion does not apply to liability for damages… But (a)ssumed in a contract or agreement that is an "insured contract"** provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary

litigation expenses incurred by or for a party other than an insured are deemed
to be damages because of "bodily injury" or "property damage", provided:
(a) Liability to such party for, or for the cost of, that party's defense has also
been assumed in the same "insured contract"; and
(b) Such attorneys' fees and litigation expenses are for defense of that party
against a civil or alternative dispute resolution proceeding in which damages
to which this insurance applies are alleged.

Exhibit 1, NAV 613.

The upshot of the foregoing provision is that Pacific Bay is insured by Navigators against Pacific Bay's express contractual obligation to defend and indemnify the General Contractor in the CD Litigation. Since the General Contractor sued Pacific Bay to enforce Pacific Bay's express contractual obligation to defend and indemnify the General Contractor, and further since the General Contractor formally demanded indemnification from Navigators pursuant to the "insured contract" which was created by Pacific Bay having expressly promised to defend and indemnify the General Contractor,[9] Navigators should have expressly addressed this obviously critical issue of Pacific Bay's "insured contract" coverage in Navigators' Denial.

Navigators did not do so. Far from addressing its liability to insure Pacific Bay for Pacific Bay's "insured contract," Navigators' Denial does not, either implicitly or expressly, mention Pacific Bay's entitlement to coverage under the "insured contract" provision of the Navigators' policy. Pacific Bay contends that it is an indisputable fact that Navigators' failure to mention Pacific Bay's "insured contract" coverage in its Denial was at the very least a grossly negligent omission, assuming only *arguendo* that Navigators' claims handler was somehow ignorant of the "insured contract" coverage. Assuming, on the other hand, Navigators' claims handler was aware of the "insured contract" coverage in the Policy, the only explanation for the failure to have mentioned this coverage in the Denial is the existence of an intent to deceive Pacific Bay by the concealment of a policy benefit Pacific Bay was both seeking and entitled to.

---

[9] PBM's express contractual obligation to indemnify the General Contractor is quoted at Exhibit 2, NAV 200.

III.   **ARGUMENT**

A.   **"Familiar principles" of the duty to defend govern this motion.**

The "familiar principles" governing the adjudication of an insurer's duty to defend have been set forth in many reported cases both before and after they were recited by the California Supreme Court in the landmark opinion in *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295 ("*Montrose I*"). They bear recitation here because they provide the context within which the issues presented are to be determined:

> Recently we had occasion to restate the familiar principles governing adjudication of the insurer's duty to defend. …(W)e observed: "(A) liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. (*Gray v. Zurich Insurance Co.* (*supra*, 65 Cal.2d 263,… (*Gray*) ).) As we said in *Gray*, 'the carrier must defend a suit which *potentially* seeks damages within the coverage of the policy.'…Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded. (Citations.)" …
>
> "The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy.… As one Court of Appeal has put it, "(f)or an insurer, the existence of a duty to defend turns not upon the ultimate adjudication of coverage under its policy of insurance, but upon those facts known by the insurer at the inception of a third-party lawsuit.… Hence, the duty 'may exist even where coverage is in doubt and ultimately does not develop.' … The defense duty is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded…, or until it has been shown that there is no potential for coverage...Imposition of an immediate duty to defend is necessary to afford the insured what it is entitled to: the full protection of a defense on its behalf.… The insured's desire to secure the right to call on the insurer's superior resources for the defense of third party claims is, in all likelihood, typically as significant a motive for the purchase of insurance as is the wish to obtain indemnity for possible liability. As a consequence, California courts have been consistently solicitous of insureds' expectations on this score.

*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295–296.

The extent to which these "familiar principles" favor the insured in connection with determination of whether an insurer owes a duty to defend is reflected in the California Supreme Court's unequivocal statement that the insurer's duty to defend is triggered whenever there is so much as a "bare potential" or "possibility" of coverage. *Id.* at 300. In adopting this standard, the California Supreme Court rejected the insurer's argument that the insured should have to bear the burden of proving at least a "reasonable potential for coverage." *Id.*

**B.    Navigators, not Pacific Bay, bears the burden of proof in this motion.**

        **(i)    Navigators' Denial concedes Pacific Bay has met its minimal burden of proving the possibility of an "occurrence" of potentially covered "property damage."[10]**

In order to trigger an insurer's duty to defend, an insured such as Pacific Bay bears the relatively minimal burden of proving that, based on the allegations of the underlying third-party Complaint, and the facts either actually known by the insurer, or reasonably discoverable by the insurer upon a prompt and thorough investigation, the third-party allegations against the insured establish that there is at least the above referenced "bare "potential" or "possibility" of covered damages being proven against the insured in that underlying third party litigation.

> To prevail, the insured must prove the existence of a potential for coverage, while the **insurer must establish the absence of any such potential**. In other words, **the insured need only show that the underlying claim may fall within policy coverage**; **the insurer must prove it cannot.** Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales. Any seeming disparity in the respective burdens merely reflects the substantive law.

*Montrose I*, *supra*, at 300 (emphasis).

As noted in the statement of facts above, Navigators expressly acknowledged that the General Contractor's cross-complaint against Pacific Bay alleged an "occurrence" of "property

---

[10] The quoted terms "occurrence" and "property damage" are defined in the Policy. PBM does not view the definitions as material to the issues presented here and hence has not quoted those provisions.

damage" within policy period. Decl. Wetmore, ¶ 21, Exhibit 3, NAV 330. Thus, Navigators has admitted that Pacific Bay has met its basic "bare potential or possibility" burden of triggering Navigators' duty to defend.

As a result, the burden of proof with respect to Navigators' Denial of the duty to defend shifts to Navigators to prove the application of either or both of the "your product" and "your work" exclusions. Navigators' burden is not only to prove with certainty that one or both exclusions apply; it is to prove that, to the extent either or both exclusions apply, **that exclusion, or those exclusions can be proven by the insurer to constitute the "sole cause" of the otherwise potentially covered "property damage."**

> To preclude even the possibility of coverage under an exclusion, thus relieving an insurer of the duty to defend, the insurer bears the burden of proof and must establish that the claimed loss was **solely** caused by an excluded peril.

*Legion Ins. Co. v. Wisconsin-California Forest Products* (E.D. Cal., Oct. 19, 2001, No. CIVS 00-2289 WBS/PAN) 2001 WL 35809243, at *5 (emphasis).

### C. Navigators bears an "all possible worlds" burden of proof with "conclusive evidence," viewed under the closest possible scrutiny."

> An insurer may rely on an exclusion to deny coverage only if it provides conclusive evidence demonstrating that the exclusion applies.…exclusions are narrowly construed and insurer bears burden of proving their application); ... Thus, an insurer that wishes to rely on an exclusion has the burden of proving, **through conclusive evidence**, that the exclusion applies in ***all possible worlds.***

*Alantic Mutual Ins. Co. v. J. Lamb, Inc*., (2002) 100 Cal.App. 4th 1017, 1038-39 (emphasis added); see also this Court's opinion in *Hanover Insurance Company v. Paul M. Zagaris, Inc.* (N.D. Cal. 2017) 237 F.Supp.3d 925, 929, af''d (9th Cir. 2018) 714 Fed.Appx. 735.

"(A)n exclusion is subjected to the closest possible scrutiny"…"and judged from the perspective of an average layperson…." *Haynes v. Farmers Ins. Exchange* (2004) 32 Cal.4th 1198, 1212; cited in *Ticketmaster, LLC v. Illinois Union Ins. Co*. (9th Cir. 2013) 524 Fed.Appx. 329, 330.

It is self-evident that each of the "your work" and "your product" exclusions contains the above referenced "arising out of" condition precedent. Therefore, for either exclusion to apply, **Navigators must prove with "conclusive evidence" that all damages alleged in the General Contractor's lawsuit arise solely out of either the "work" or the "product" of Pacific Bay.**

As evident from the content of Navigators' Denial, the insurer has not even attempted to meet the burden of establishing the occurrence of the "arising out of" condition precedent with respect to either the "your work" or "your product" exclusions. On the contrary, rather than attempting to illustrate how the "arising out of" condition precedent has occurred or been met respect to each of the two exclusions, Navigators has effectively pretended that there is no "arising out of" condition precedent with respect to either exclusion. Thus, it has stated at least twice in the Denial that the two allegedly operative exclusions are controlling so long as there is merely a damage to the "work" of the insured, and/or a damage to the "product" of the insured. In so doing Navigators has affirmatively misrepresented the scope each of the two exclusions as being far greater and more exclusive than it is. In effect, Navigators has falsely attempted to convince the insured that neither exclusion has the operative "arising out of" condition precedent which each exclusion has.

**D.** **The well-established rules of contractual interpretation preclude Navigators from effectively arguing the nonexistence of the "arising out of" condition precedent to the "your product" and "your work" exclusions.**

As of the filing of this motion Pacific Bay is unaware of the argument Navigators will make with respect to the "arising out of" condition precedent or the meaning of the "your product" and "your work" exclusions generally. Unless Navigators is prepared to concede that it was wrong in relying upon the "your product" and "your work" exclusions in denying its duty to defend, it will have no alternative but to argue that, notwithstanding the express language of each of the two "arising out of" condition precedent, those "arising out of" condition precedent do not actually mean what they say. Navigators will have to argue, consistent with its assertions in the Denial, that it is alone sufficient for the exclusions to be triggered if there is alleged damage to the "work" or "product" of the insured, and that there is no requirement, for the application of the respective exclusion, that the alleged "property damage" "arise out of" either the "work" or "product."

Given that Navigators has not yet made this argument, and further given that Pacific Bay is not certain what argument Navigators will make in this regard, Pacific Bay will reserve its response to this anticipated but uncertain argument for its reply papers. Pacific Bay will note here, however, to assure that Navigators is fully informed of Pacific Bay's position on the issue, that the basic

principles of contractual interpretation appear stacked against Navigators making any sustainable argument in this regard. Since each of the two exclusions upon which Navigators relies includes the "arising out of" condition precedent language, Pacific Bay cannot imagine what argument Navigators will make, within the well-established rules of contractual interpretation, to support its contention that the two exclusions certainly and comprehensively preclude the possibility of any covered damage being proven against Pacific Bay.

**E.**   **Claim 1 Conclusion: Navigators' acknowledgment that the General Contractor's lawsuit against Pacific Bay implicated allegations of an "occurrence" of "property damage" within the policy period concedes Pacific Bay has met its burden of triggering the duty to defend. Navigators' failure to certainly establish the occurrence of the "arising out of" condition precedent with respect to either the "your work" or the "your product" exclusion compels the conclusion, as a matter of law, that Navigators had, and breached, a duty to defend as of the August 15, 2018, date of its Denial.**

Pacific Bay contends that Navigators' assertion of both the "your product" and "your work" exclusions without having made any attempt to determine whether the alleged damage to Pacific Bay's "work" or "product" arose out of either that "work" or that "product," or any part of those, reflects a fundamental misapplication of the two exclusions by Navigators. Pacific Bay contends that, with respect to each of the two exclusions at issue, it was impossible for Navigators to have concluded that either exclusion negated the potential for covered damage without first having correctly determined that the alleged "property damage" arose solely out of, either or both, Pacific Bay's "product" or its "work."

Put alternatively, so long as there had been no certainly correct prior determination by Navigators that all the alleged "property damage" arose out of either or both Pacific Bay's "work" or "product," Navigators could not properly rely on the "your work" and "your product" exclusions to deny coverage. Since there had been no such determination, or even a purported determination, by Navigators as of the August 15, 2018, date of the Denial, the Denial was necessarily incorrect, and Navigators necessarily had a duty to defend Pacific Bay.

**F.  Claim 2: Separate and apart from the foregoing, Navigators had duties to both defend and indemnify Pacific Bay under the "insured contract" coverage.**

Completely independent of the basis for the duty to defend discussed in connection with Claim 1 above, Navigators had a duty to defend and indemnify Pacific Bay under the "insured contract" coverage of the Policy. Navigators' duty to indemnify Pacific Bay with respect to Pacific Bay's obligation to indemnify the General Contractor, extends to include the legal fees being incurred by the General Contractor to defend itself against the lawsuit of the Owner. See, *e.g.*, *Golden Eagle Ins. Co. v. Insurance Co. of the West* (2002) 99 Cal.App.4th 837, 842 ("*Golden Eagle*") ("We hold, in accordance with the objectively reasonable expectations of the insured, that the indemnitee's defense costs are sums the insured is legally obligated to pay as damages because of property damage.") Consistent with the above-referenced "familiar principles" of the duty to defend the "insured contract" coverage, "courts should construe 'insured contract' provisions broadly, in favor of coverage." *Id.* at 851.

The indemnity provision in the subcontract between Pacific Bay and the General Contractor Deacon states in relevant part:

> [Pacific Bay] shall defend, indemnify, and save harmless [General Contractor Deacon]…, Owner, and any parties that Contractor is required to indemnify pursuant to the Contract Documents, including their officers, directors, partners, joint ventures, agents, employees, affiliates, parents, and subsidiaries, and each of them, of and from any and all claims, demands, causes of action, damages, costs expenses, actual attorney's fees, losses or liabilities, in law or in equity, of every kind and nature whatsoever ("Claims") arising out of or in connection with Subcontractor's obligations under this Subcontract.

Ex. 2, Section 31.

Simply put, once the General Contractor had been sued by the Owner in the underlying CD Litigation, Pacific Bay had an express written contractual duty to defend and indemnify the General Contractor to the extent the claims against the General Contractor either "arose out of" or were "in connection with" Pacific Bay's obligations under its Subcontract with the General Contractor. This duty of Pacific Bay entailed Pacific Bay's obligation to mount and fund the General Contractor Deacon's defense over the period of the now almost three years of litigation since the initial tender

of defense from the General Contractor. Pacific Bay has been in breach of this express contractual duty to defend and indemnify over those three years directly because Navigators has concealed and failed to acknowledge or honor its duty to defend and indemnify Pacific Bay under the "insured contract" coverage of the Policy.

Pacific Bay's express contractual duty to defend and indemnify the General Contractor Deacon immediately triggered Navigators' duty to both defend and indemnify Pacific Bay. Navigators' duty to defend Pacific Bay against the contractual indemnity allegations would entail "mounting and funding"[11] Pacific Bay's defense against the contractual liability claims of the General Contractor.

### G. Claim 2: Conclusion

It is abundantly clear that Navigators had actual knowledge of Pacific Bay's contractual duty to defend and indemnify the General Contractor Deacon against the claims of the Owner at the time Navigators denied Pacific Bay all coverage on August 15, 2018. It is further indisputable that Pacific Bay's contractual duty to defend and indemnify the General Contractor triggers both actual and potential coverage for Pacific Bay under the "insured contract" coverage of the Navigators' Policy. Finally, it is self-evident that Navigators did not so much as hint at the existence of the "insured contract" coverage to which Pacific Bay was entitled in Navigators' August 15, 2018 Denial. Whether "merely" negligent, or actually fraudulent, Navigators' concealment of the "insured contract" coverage to which Pacific Bay was entitled was certainly wrongful.

## IV. <u>CONCLUSION</u>

The two issues proffered in this motion present pure questions of law given the underlying undisputed and indisputable facts. Pacific Bay respectfully requests that partial summary judgment be granted accordingly.

---

[11] "[T]he insurer's duty to defend runs to claims that are merely potentially covered.… It entails the rendering of a service, viz., the mounting and funding of a defense…" *Buss v. Superior Court* (1997) 16 Cal.4th 35, 46.

DATED: August 2, 2021

BORCHARD & CALLAHAN

By:      /s/ Michael G. Dawe
         MICHAEL G. DAWE
         BRIAN D. CRONIN
         Attorneys for Plaintiff