United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PACIFIC BAY MASONRY, INC.,

        Plaintiff,

        v.

NAVIGATORS SPECIALTY
INSURANCE COMPANY,

        Defendant.

No.  C 20-07376 WHA

**ORDER RE MOTION FOR PARTIAL
SUMMARY JUDGMENT**

## INTRODUCTION

In this insurance-coverage dispute, plaintiff subcontractor asserts that defendant insurer violated its duty to defend in an underlying construction defect action.  Because this order finds that information known to the insurer at the tender of defense could not foreclose that another subcontractor was responsible for the relevant damage, there was a possibility of coverage and the insurer had a duty to defend.

## STATEMENT

Plaintiff Pacific Bay Masonry, Inc. (PBM) is a construction company that performs masonry work in the Bay Area.  In September 2014, PBM entered into a standard form subcontract agreement with general contractor Deacon Corp. to perform masonry work for a new retail shopping facility at 3001 Broadway in Oakland, California.  Deacon subcontracted with PBM to install all concrete masonry unit walls for the building, parking structure, and

planters for the facility.  Concrete masonry units (CMUs) are colloquially referred to as cinder blocks.  PBM performed all CMU work on the facility between March 7, 2015, and January 18, 2016.  The subcontract included an express indemnity provision and, at all times during the applicable period, PBM held a commercial general liability insurance policy through defendant Navigators Specialty Insurance Company (Wetmore Decl. ¶¶ 2, 4–8; Exhs. 2, 3).

In August 2017, the successor to the owner of the shopping facility at 3001 Broadway, Niki Properties, LLC, filed suit against Deacon and others in state court, *Niki Properties, LLC v. SD Deacon Corp. of California*, No.  RG17871279 (Cal. Super. Ct. filed Aug. 11, 2017).   In its complaint, Niki alleged a variety of construction defects:

> The products and work were to have been selected, designed, manufactured, installed and performed free from defects, and fit for the purpose of ordinary commercial use, but were not; instead they are defective, have resulted in consequential damage to other building components and have caused specific property damage to personal property and other property.  The defects include, but are not limited to, inadequate waterproofing and premature deterioration of the roof deck coating and roof structure; lack of or reverse slope of the roof; damage to roof from improper and illegal saw cut; lack of gaps or ventilation at wood panels; lack of drainage at wall bases; efflorescence on roof deck at CMU wall; metal door frames causing rust on urethane coating at parking deck; improper waterproofing and flashing of the CMU block wall; improper assembly and waterproofing of the planter boxes on the roof; improper and inadequate waterproofing of the stairwells; lack of flexible connection at gas line; deteriorated sealant at windows; open joints in precast concrete; pipe penetrations at rooftop due to poorly fabricated covers; fading or missing parking striping; and failed sealing of ADA mats

(Niki Compl. ¶ 20, Dkt. No. 30-15).  In November 2017, Deacon filed a cross-complaint against the developer of the property (30th and Broadway, LLC) and others, naming many Roe defendants for other parties involved in the project (Deacon Cross Compl., Dkt. No. 30-16). The parties here agree that on June 28, 2018, Deacon named PBM as a cross-defendant subcontractor by Roe amendment.*

---

* Per Navigators' request, this order takes judicial notice of the three iterations of the underlying action, which does not include the second amended cross-complaint, apparently filed on June 28, 2018.  *See* FRE 201(b)(2).

United States District Court
Northern District of California

At this point, Deacon contacted Navigators regarding the *Niki* action and PBM's coverage.  PBM also communicated with Navigators, requesting defense and indemnity.  Navigators began an investigation into the dispute and requested and received Niki's initial interrogatory responses, a presentation of defects and damages prepared by Niki's expert, and an informal preliminary defect list as well as a preliminary description of the defects (Wetmore Decl. ¶ 18, Exh. 4; Davis Decl. ¶¶ 2–3, Exh. A).  In correspondence dated August 15, 2018, Navigators denied PBM coverage under the policy:

> Navigators finds no duty to either defend or indemnify [PBM] under the policies listed above based on the fact the allegation of "property damage" is to "your work" and "your product".  As addressed in this correspondence, the repair, replacement of [sic] removal of "your work" and "your product" is not covered under the policy

(Wetmore Decl. Exh. 3 at 1).  That same day, Navigators denied Deacon's tender of defense and demand for indemnification (*id.* at Exh. 5).

One month later, in correspondence dated September 10, 2018, PBM's counsel requested that Navigators reconsider its denial of coverage, presciently asserting that "[a]s the matter proceeds, fees and costs will only continue to accrue and PBM will have no choice but to seek damages against Navigators for its continued breach of its duty to defend" (Davis Decl. Exh. E at 3).  A week later, Navigators responded and held to its position, after which our parties went radio silent (*id.* at ¶ 11, Exh. F).  Navigators would not hear from PBM again on the matter until the filing of this action two years later.

While this action kicked into gear, counsel for PBM reached out to Navigators in March 2021 once again about the coverage denial, this time armed with a new theory.  PBM cited November 2020 correspondence from Deacon's counsel that the CMU walls PBM had built had damaged the three coats of silicone sealer another subcontractor had applied to the walls, and argued that this satisfied the parameters Navigators had placed on coverage.  PBM corroborated these statements with photos its expert had taken from a cite inspection of the walls (Tolson Decl. Exh. AA).  Navigators agreed.  It arranged to defend PBM in the *Niki*

litigation under a reservation of rights, and reimbursed PBM for 100% of the fees and costs that PBM had incurred since the date of tender, August 15, 2018 (Davis Decl. ¶ 13, Exh. G).

In this action, PBM moves for partial summary judgment regarding Navigators' duty to defend.

## ANALYSIS

Summary judgment is appropriate if there is no genuine dispute of material fact, those facts that may affect the outcome of the suit. "[T]he substantive law's identification of which facts are critical and which facts are irrelevant . . . governs." A genuine dispute contains sufficient evidence such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49 (1986). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). But "mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Community College*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). If a proper jury question remains, summary judgment is inappropriate. *See Anderson*, 477 U.S. at 249.

### 1.   INSURANCE POLICY INTERPRETATION AND THE DUTY TO DEFEND.

Starting with first principles, an insurance policy is a contract between an insurer and an insured, with the insurer making promises and the insured paying premiums, one in consideration of the other, against the risk of loss. Thus, while insurance contracts may have special features, the basic rules of contract interpretation still apply. Contract interpretation is a question of law. Under California law, considering the insurance contract as a whole, an interpretation must give effect to the mutual intention of the parties at the time of formation. If the language is clear and explicit, it governs. But when it is ambiguous, it must be read in conformity with what the insurer believed the insured understood at formation, and, if still problematic, in a sense that satisfies the insured's objectively reasonable expectations. At that

point, if ambiguities remain, insurance contracts are construed against the insurer. *Buss v. Super. Ct.*, 939 P.2d 766, 772 (Cal. 1997); *Bank of the W. v. Super. Ct.*, 833 P.2d 545, 551–52 (Cal. 1992); *see also AIU Ins. Co. v. Super. Ct.*, 799 P.2d 1253 (Cal. 1990).

A commercial general liability policy ("CGL" policy, formerly, a comprehensive general liability policy) provides liability insurance for businesses and, like here, typically have standardized provisions. CGL policies reflect the theory that insurance "typically is designed to protect against contingent or unknown risks of harm . . . not to protect against harm that is certain or expected." A CGL policy "is written in two essential parts: the insuring agreement, which states the risk or risks covered by the policy, and the exclusion clauses, which remove coverage for risks that would otherwise fall within the insuring clause." A court will normally first examine the coverage provisions to determine whether a claim falls within the policy. After this review, the burden of proof is on the insurer to demonstrate that an exclusion applies to the asserted claim. *Waller v. Truck Ins. Exchange, Inc.*, 900 P.2d 619, 625–26 (Cal. 1995).

"A liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." The duty to defend is more expansive than the duty to indemnify, an insurer must defend a suit even when the evidence merely suggests, without conclusively establishing, that the policy does not cover the loss. Indeed, the Supreme Court of California has emphasized that the "bare potential or possibility of coverage" triggers the duty to defend. *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal. 4th 287, 295, 299–300 (1993) (quotation omitted). In other words, "a duty to defend does not exist only when the underlying complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage*." *Pardee Const. Co. v. Ins. Co. of the W.*, 77 Cal. App. 4th 1340, 1351 (Cal. Ct. App. 2000) (cleaned up, emphasis in original).

Determination of the duty to defend is made in the first instance by comparing allegations in the complaint against the insured with the terms of the policy. Facts reasonably inferable from the complaint that suggest a claim is covered also trigger the duty to defend. And, extrinsic facts (from any source) known by the insurer, either at the inception of the third-party lawsuit or at the time of the insured's tender of defense, are also properly considered when

determining wither a duty to defend has arisen.  In a "mixed action," where some claims are potentially covered while others are not, the insurer still has a duty to defend as to the claims that are at least potentially covered.  *Hartford Casualty Ins. Co. v. Swift Distrib., Inc.*, 326 P.3d 253, 258–59 (Cal. 2014); *Travelers Prop. Casualty Co. of Am. v. Actavis, Inc.*, 16 Cal. App. 5th 1026, 1036–37 (Cal. Ct. App. 2017).

### 2.    WHETHER ANY COVERAGE POLICY EXCLUSIONS APPLY.

This order first addresses the primary issue of whether any policy exclusions apply to PBM's claim.  Afterwards, this order will briefly discuss the similar, antecedent question of whether PBM's claim falls within the policy.

Here is the relevant provision from Section 1 of the policy, describing coverage for bodily injury and property damage liability:

**1. Insuring Agreement**

**a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

**(1)**  The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

**(2)**  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**

(Policy § 1, Coverage A, ¶ 1.a, Davis Decl. Exhs. B, C).  Standard CGL policies contain several separate exceptions to coverage collectively referred to as work-product exclusions — here, exclusions k and l are at issue:

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

6

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor

(Policy § I, Coverage A, ¶ 2.k, l).  The two applicable policies here — SF08CGL012127-06, effective 7/11/14–6/15/15, and SF15CGL012127-IC, effective 6/15/15–6/15/16 — both contain the same standard form contractual language (Davis Decl. ¶ 7).

These exclusions reflect the basic principle in insurance law that the risk of replacing and repairing defective material or poor workmanship has generally been considered a commercial risk not passed on to the insurer.  In other words, these work-product exclusions "appl[y] to the insured's defective work as well as to the insured's satisfactory work that is damaged by the insured's defective work."  *Diamond Heights Homeowners Ass'n v. Nat'l Am. Ins. Co.*, 227 Cal. App. 3d 563, 571 (Cal. Ct. App. 1991) (citing *W. Emp'rs Ins. Co. v. Arciero & Sons, Inc.*, 145 Cal. App. 3d 1027, 1029 (Cal. Ct. App. 1983)); *F&H Const. v. ITT Hartford Ins. Co.*, 118 Cal. App. 4th 364, 371–73 (Cal. Ct. App. 2004); *see also* Croskey *et al.*, Cal. Prac. Guide: Insurance Litigation § 7:1443 *et seq.* (The Rutter Group 2021).

Navigators argues it had no duty to defend because, "'property damage' . . . does not include repair or replacement of the insured's own work, or of the products the insured has supplied" (Opp. 15).  Relying on *Arcerio* and the broad interpretation of "arising out of" under California law, Navigators further explains that "all that is required [for the work-product exclusions to apply] is that the CMU wall defects and damages are minimally causally linked to PBM's work" (*id.* at 18–19).  Not so.

Here's the point that Navigators ignores.  The work-product exclusions under California law *presuppose that the insured's own work was in some way defective*, reflecting the policy of placing the risk of shoddy workmanship on the insured.  The natural corollary, then, is when damage does *not* arise from the insured's own shoddy work but from another source (such as a third-party subcontractor), coverage would not be barred by the exclusions.  Navigators' assertion, then, that property damage "does not include repair or replacement of the insured's

7

work" omits what California law makes clear — it is the insured's *defective* work or product
that is not covered.  This order finds that if the bare possibility existed that an extrinsic source,
not PBM, was responsible for the CMU walls being damaged, then Navigators would not be
able to rely on the work-product exclusions to deny coverage.

This interpretation of the work-product exclusions heeds *Pulte Home Corp. v. Am. Safety
Indemnity Co.*, 14 Cal. App. 5th 1086 (Cal. Ct. App. 2017), where the court considered and
rejected similar arguments to those Navigators proffers here.  In *Pulte Home*, the insurer
similarly argued "there could be no coverage 'for injuries arising out of the work itself, *e.g.*,
construction defects.'"  *Id.* at 1117–18.  *Pulte Home* considered similar work-product
exclusions as here, and the court reasoned:

> The problem with these exclusionary arguments is that the record
> does not contain a showing by the insurer that all of the damage . .
> . claim[ed] was limited to the particular location where one or
> another of the subcontractors was performing their work, such that
> these policy exclusions would clearly apply.  As far as the
> construction defect complaints disclose, there were potentially
> overlapping forms of damage . . . , all of which had permitted some
> kind of moisture damage to occur over time. . . .  [T]here was no
> reliable way shown for determining, at the outset of the
> construction defect matters, which subcontractor's work had been
> substandard or whether it had damaged its own or another's
> adjacent work.  As of the time of tender, those claims could have
> involved damage from one or more types of work done at the
> projects.  The faulty workmanship exclusions did not clearly apply
> to preclude a duty to defend.

*Id.* at 1118–19; *see also Roger H. Proulx & Co. v. Crest-Liners, Inc.*, 98 Cal. App. 4th 182,
202–03 (Cal. Ct. App. 2002).

In other words, *Pulte Home* held the work-product exclusions do not apply, and a duty to
defend arises, when multiple subcontractors work on connected or related tasks such that it is
unclear which subcontractor's work was substandard and ultimately damaged the system.  This
order finds the reasoning in *Pulte Home* germane and applies to exclusions k and l here.

In its denial letter, Navigators described exactly that sort of overlapping damage issue
contemplated by *Pulte Home* (emphasis added):

> A review of the information provided shows plaintiff believes the
> top of the parapet walls on the parking structure are unsealed and
> should have had a waterproof membrane or sheet metal cap

installed. *A review of the scope of work shows this was not within the scope of work for* [*PBM*]. The plaintiff has a concern the rebar within the walls may be deteriorating due to the lack of waterproofing and efflorescence is developing on the walls. It has been confirmed that [PBM] installed the rebar. There is water infiltration and staining of the CMU block wall in the Sprouts loading area.

Plaintiff is alleging the CMU planter boxes in front of the project are experiencing efflorescence due to improper waterproofing. *The waterproofing of the planter boxes is not within the scope of work of* [*PBM*]

(Denial Letter 2). According to Navigators' own analysis, the installation of a waterproof membrane and/or sheet metal cap on top of the CMU parapet walls fell explicitly outside PBM's scope of work. Thus, this order finds a possibility that damage to the CMU walls (PBM's work and product) could have arisen due to the actions or omissions of another subcontractor. The same is true of the CMU planter boxes. Because waterproofing the planter boxes was outside the scope of PBM's work, it is conceivable that the efflorescence at issue in the *Niki* complaint was not due to PBM's defective work or product but the failings of a third party.

Evidence Navigators relied upon in its denial letter bears out its analysis. Navigators received an informal preliminary defects list from Niki's counsel in the underlying action (Davis. Decl. Exh. A at 1). In that list of deficiencies, item six concerns the "bare tops" of the CMU walls, and described how the "[t]op of [CMU] wall is exposed to moisture intrusion and water is entering through the [CMU] wall and depositing onto [CMU] walls. Top of [CMU] wall needs to be protected" (*id.* at 49). On the next page of the deficiencies list, item seven is planter waterproofing, and the description explained how the "[u]pper course of [CMU] is lacking waterproofing." To repeat, Navigators explicitly recognized that neither the waterproofing of the top of the CMU walls (by either sheet metal cap or waterproof membrane), nor the waterproofing of the CMU planter boxes fell within PBM's scope of work (Denial Letter 2). This evidence indicates that another subcontractor's substandard work may, indeed appears likely to, have caused the property damage to PBM's CMU walls. Because at the time of tender, the claims against PBM could have involved defective work from other, third-party subcontractors, the work-product exclusions did not apply.

United States District Court
Northern District of California

In its briefing and during oral argument, Navigators focused on apparent misstatements by PBM's counsel regarding PBM's scope of work in a September 2018 letter requesting Navigators reconsider its denial (Opp. 9).  But Navigators' August 2018 denial of coverage preceded PBM's letter, and California law mandates that an analysis of the duty to defend considers the facts the insurer knows or becomes aware of, if not from the inception of the third-party lawsuit, then at the time of tender.  *See Hartford*, 326 P.3d at 287–88.  Even if counsel's misstatements fostered a dispute over the relevant facts, it would still not extinguish the possibility of coverage (and thus the duty to defend) because Navigators had access to primary documents setting out PBM's actual scope of work.  Disputed facts must still be considered in the duty to defend analysis.  *See Hartford*, 326 P.3d at 258–59.

Even if this order accepts as true Navigators' argument that its policy only provided coverage for liability arising out of damage to the property of others, a duty to defend *still* arose.  In its complaint, Niki pleaded:

> The products and work . . . are defective, have resulted in consequential damage to other building components and have caused specific property damage to personal property and other property.  The defects include . . . efflorescence on roof deck at CMU wall; . . . improper waterproofing and flashing of the CMU block wall; improper assembly and waterproofing of the planter boxes on the roof

(*Niki* Compl. ¶ 20).  The *Niki* complaint thus alleged that PBM's work resulted in damage to property other than its own.  Navigators argues that Niki's counsel confirmed in a call with counsel for Navigators that no third-party property damage had arisen from PBM's work.  The conflicting statements in the *Niki* complaint and the call with Niki's counsel may demonstrate a dispute existed on whether third-party property damage arose from PBM's work.  This does not extinguish the duty to defend as disputed facts are considered in a duty to defend analysis.

### 3.   WHETHER PBM'S CLAIM FALLS WITHIN THE COVERAGE POLICY WITH NAVIGATORS.

This order briefly addresses the antecedent question of whether the *Niki* litigation triggered coverage in the first place.  Navigators argues there "were no allegations of covered property damage" and that "the 'property damage' required to trigger coverage under a general

1   liability policy does not include repair or replacement of the insures own work, or of the

2   products insured has supplied" (Opp. 14).

3      Per the policy, as relevant here, property damage means:

4          **a.**  Physical injury to tangible property, including all
       resulting loss of use of that property. All such loss of use shall be
5          deemed to occur at the time of the physical injury that caused it; or

6          **b.**  Loss of use of tangible property that is not physically
       injured. All such loss of use shall be deemed to occur at the time of
7          the "occurrence" that caused it

8   (Policy at § 5(17)).  Applying the definition "physical damage to tangible property":

9          [T]he prevailing view is that the incorporation of a defective
       component or product into a larger structure does not constitute
10         property damage unless and until the defective component causes
       physical injury to tangible property in at least some other part of
11         the system.

12  *F&H*, 118 Cal. App. 4th at 371–73.  As *F&H* explained, "property damage is not established

13  by the mere failure of a defective product to perform as intended."  *Ibid.*; s*ee also Regional*

14  *Steel Corp. v. Liberty Surplus Ins. Corp.*, 226 Cal. App. 4th 1377, 1392–93 (Cal. Ct. App.

15  2014) (same).

16      Navigators' arguments pursuant to *F&H* fail for the same reasons as those it proffered for

17  the work-product exclusions.  *F&H* says that property damage excludes incorporation of a

18  *defective* component unless and until the *defective* component causes physical injury to some

19  other part of the whole.  Here, Navigators cannot definitively show PBM's work was defective

20  and so reject its duty to defend.

21      In sum, this order finds that Navigators had a duty to defend PBM in the underlying

22  action.  In light of this holding, this order does not reach PBM's second basis for summary

23  judgment on the grounds that Navigators had duties to defend and indemnify PBM under the

24  insured contract provision of the policy.

25      **4.**    **NAVIGATORS' OBJECTIONS TO EVIDENCE.**

26      Navigators objected to many passages in the declaration offered by PBM's CEO Ray

27  Wetmore (Dkt. No. 30-12).  *First*, Navigators' objections contravene Civil Local Rule 7-3(a),

28  which require any procedural and evidentiary objections to the motion be contained within the

United States District Court
Northern District of California

brief or memorandum, which may not exceed twenty-five pages of text. *Second*, this order did not rely on any material objected to by Navigators, so the objections are **DENIED** as moot.

## CONCLUSION

To the extent stated, PBM's motion for partial summary judgment is **GRANTED**.


**IT IS SO ORDERED.**


Dated:  September 16, 2021

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
Northern District of California